IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

WILLIAM HAMILTON, *individually and*
*as the personal representative*
*of the estate of Linda Hamilton*,

        Plaintiff,

v.                              //      CIVIL ACTION NO. 1:20CV86
                                           (Judge Keeley)

COLUMBIA TRANSMISSION, LLC,
TRANSCANADA USA SERVICES, LLC,
TC ENERGY, ANTHONY CAPP, JOHN SHRADER,
DOES 1, 2, 3, 4, 5, AND 6,
MAINE DRILLING AND BLASTING, INC., and
ASSOCIATED PIPELINE CONTRACTORS,

        Defendants.

//

COLUMBIA TRANSMISSION, LLC,
TRANSCANADA USA SERVICES, LLC,
TC ENERGY, ANTHONY CAPP, and JOHN SHRADER,

        Crossclaimants,

v.

ASSOCIATED PIPELINE CONTRACTORS,

        Cross Defendant.

//

ASSOCIATED PIPELINE CONTRACTORS,

        Crossclaimant,

v.

MAINE DRILLING AND BLASTING, INC.

        Cross Defendant.

**MEMORANDUM OPINION AND ORDER GRANTING MOTION TO**
**EXCLUDE TESTIMONY OF KENNETH ELTSCHLAGER [DKT. NO. 56]**

Pending is the motion of the defendants, Maine Drilling and

Blasting, Inc. ("Maine Drilling") and Associated Pipeline

Contractors ("APC") ("the moving defendants") to exclude the expert

HAMILTON V. COLUMBIA TRANSMISSION, LLC                    1:20CV86

MEMORANDUM OPINION AND ORDER GRANTING MOTION TO
EXCLUDE TESTIMONY OF KENNETH ELTSCHLAGER [DKT. NO. 56]

testimony of Kenneth Eltschlager ("Eltschlager") (Dkt. No. 56). For the reasons that follow, the Court **GRANTS** the moving defendants' motion.

## I.     BACKGROUND

### A.   Factual History

On June 25, 2016, Linda and William Hamilton executed an Easement and Right of Way Agreement ("Agreement") allowing Columbia Transmission, LLC, or its affiliates, TransCanada USA Services, LLC and TC Energy, (collectively, "Columbia"), to construct, install, and maintain an oil and gas pipeline across their property located in Doddridge County, West Virginia (Dkt. No. 67-1). Columbia planned to build a natural gas pipeline, to be known as the XPress pipeline, through West Virginia from Marshall County to Cabell County (Dkt. No. 27 at 18). "Spread 3" of this pipeline would run across the Hamiltons' property. Id. On November 14, 2017, Columbia contracted Associated Pipeline Contractors ("APC") to construct the Spread 3 pipeline (Dkt. No. 65 at 2). APC, in turn, subcontracted a portion of the project to Maine Drilling and Blasting, Inc. ("Maine Drilling"). Id.

The Hamiltons allege that for several months beginning in May 2018 one or more of the Defendants conducted blasting operations near

2

HAMILTON V. COLUMBIA TRANSMISSION, LLC                    1:20CV86

**MEMORANDUM OPINION AND ORDER GRANTING MOTION TO
EXCLUDE TESTIMONY OF KENNETH ELTSCHLAGER [DKT. NO. 56]**

their home and that they had not anticipated, nor had they been given notice, that such blasting would occur (Dkt. No. 31 at 5-6). According to the Hamiltons, the Defendants' blasting operations caused damage to their home, including unlevel counters, warped floors, cracks in their walls and foundation, separation between their cabinets and walls, roof leakage, and sinkholes in their yard (Dkt. No. 31 at 6; 78-1 at 2). Additionally, they contend that the water supply from their well decreased and developed a foul odor, leaving them without water for several months, and that blasting left piles of rubble, boulders, rock along the right of way (Dkt. No. 78-1 at 3). Lastly, the Hamiltons assert that due to the Defendants' blasting operations and the resulting harm to their home, they were forced to relocate to Florida (Dkt. No. 78 at 4-5). The Defendants deny that their blasting operations caused any damage to the Hamiltons' home.

**B.  Procedural History**

On May 5, 2020, the Hamiltons filed this lawsuit, asserting twelve (12) causes of action related to the alleged permanent damage to their land, water well, and septic system (Dkt. No. 1).[1] After Linda Hamilton ("Mrs. Hamilton") passed away on September 1, 2020,

---

[1] The Hamiltons assert negligence, strict liability, trespass, private nuisance, fraud, vicarious liability, res ipsa loquitor, negligent hiring, training, and supervision, intentional infliction of emotional distress, negligent infliction of emotional distress, damages, and punitive damages

3

HAMILTON V. COLUMBIA TRANSMISSION, LLC                    1:20CV86

**MEMORANDUM OPINION AND ORDER GRANTING MOTION TO
EXCLUDE TESTIMONY OF KENNETH ELTSCHLAGER [DKT. NO. 56]**

William Hamilton ("Hamilton") moved to substitute himself as personal representative of her estate (Dkt. No. 24) and amended his complaint to add a wrongful death claim, attributing his wife's death to the Defendant's negligence (Dkt. No. 31 at 17-18). Pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court granted the Defendants' motion to dismiss Hamilton's wrongful death claim (Dkt. No. 50).

Columbia filed crossclaims against APC alleging that APC had breached its duty to defend and indemnify Columbia against Mr. Hamilton's claims under an indemnification clause in their contract (Dkt. No. 34). APC also filed crossclaims against Maine Drilling on the same basis (Dkt. No. 36). The Court then entered a Scheduling Order on October 30, 2020 (Dkt. No. 22).

Pursuant to that Order, on July 12, 2021, Hamilton disclosed Kenneth Eltschlager as an explosion and blasting expert to opine on the damage caused to Hamilton's property by the Defendants' blasting operations (Dkt. Nos. 48; 56 at 5). On August 27, 2021, Maine Drilling and APC moved to exclude Eltschlager's testimony as unreliable and irrelevant (Dkt. No. 56). Hamilton did not respond. Instead, he sought a status conference to resolve issues "regarding discovery,

---

(Dkt. No. 31).

HAMILTON V. COLUMBIA TRANSMISSION, LLC                    1:20CV86

### MEMORANDUM OPINION AND ORDER GRANTING MOTION TO EXCLUDE TESTIMONY OF KENNETH ELTSCHLAGER [DKT. NO. 56]

timing and disclosures" (Dkt. No. 57) and to extend certain deadlines in this case (Dkt. No. 59). After hearing argument on these issues on October 14, 2021, the Court denied Hamilton's motion to extend the deadlines in this case, but did grant his oral motion to respond to the Daubert motion out of time (Dkt. No. 61). Hamilton submitted his response in opposition the next day (Dkt. Nos. 61, 62).

Following Maine Drilling's production of additional blasting logs after the close of discovery, the Court permitted the parties to develop the record related to these documents (Dkt. No. 88) and Eltschlager supplemented his expert report. But, on March 16, 2022, the Court granted in part the Defendants' joint motion to strike his supplemental report (Dkt. No. 106), specifically striking as beyond the scope of its Order any of Eltschlager's opinions unrelated to whether the Defendants' blasting operations caused damage to Hamilton's property (Dkt. No. 171). The moving defendants then supplemented their motion to exclude Eltschlager's testimony asserting that, despite the amendment, his opinions continue to be unreliable and irrelevant (Dkt. Nos. 105, 122). Hamilton responded on March 8, 2022 (Dkt. No. 125). The motion is now ripe for decision.

HAMILTON V. COLUMBIA TRANSMISSION, LLC                    1:20CV86

MEMORANDUM OPINION AND ORDER GRANTING MOTION TO
EXCLUDE TESTIMONY OF KENNETH ELTSCHLAGER [DKT. NO. 56]

II.    LEGAL STANDARD

Federal Rule of Evidence 702, governing the admissibility of expert testimony, provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The Court, as the gatekeeper, should admit the proposed expert testimony only if it is reliable and helps the trier of fact in understanding the issues or evidence. Westberry v. Gislaved Gummi AB, 178 F.3d 257, 260 (4th Cir. 1999); Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 591 (1993). If the proposed expert testimony fails to meet either prong of this test, the testimony must be excluded. Id. The proponent of the expert testimony bears the burden of establishing its admissibility by a preponderance of the evidence. Cooper v. Smith & Nephew, Inc., 259 F.3d 194, 199 (4th Cir. 2001); Daubert, 509 U.S. at 592 n. 10.

HAMILTON V. COLUMBIA TRANSMISSION, LLC                    1:20CV86

MEMORANDUM OPINION AND ORDER GRANTING MOTION TO
EXCLUDE TESTIMONY OF KENNETH ELTSCHLAGER [DKT. NO. 56]

III.    DISCUSSION

A.    Eltschlager's Proposed Testimony

Kenneth Eltschlager is a blasting specialist retained by Hamilton to establish that Defendants' blasting operations caused damage to his property (Dkt. No. 56-1 at 2).

1.    Initial Report

Eltschlager based his initial report on his review of legal documents, the blasting logs and blasting seismograph records that the Defendants had produced, and the relevant safety standards, including those of the West Virginia State Fire Marshal and the United States Bureau of Mines (Dkt. Nos. 56-1 at 2). Eltschlager reviewed the logs for nine (9) blasts that had occurred between May 24, 2018 and June 2, 2018 within 0.5 miles of the Hamilton residence. The Defendants monitored these blasts by seismograph, and according to their data, "[n]one of these blasts [had] exceeded the WV ground vibration criteria . . . or airblast criteria at the closest structure." Id. at 4.

But Eltschlager found the Defendants' data to be unreliable due to "numerous irregularities of monitoring." Id. He therefore asserted that compliance with the state safety regulations could only be determined by measuring the "scaled distance" between each blast

HAMILTON V. COLUMBIA TRANSMISSION, LLC                    1:20CV86

**MEMORANDUM OPINION AND ORDER GRANTING MOTION TO
EXCLUDE TESTIMONY OF KENNETH ELTSCHLAGER [DKT. NO. 56]**

and the nearest structure. Id. at 4. As explained by Eltschlager,

blasts at a scaled distance above than 50ft/lbs½ have a 100% chance

of non-damage. Id. at 5. He then estimated that each of the nine (9)

blasts near the Hamilton residence occurred at a scaled distance

below 50ft/lbs½ and stated "there [was] a possibility of residential

structural damage." Id. at 5. He also estimated that the ground

vibration levels at the Hamilton residence "could have been as high

as 2.12 in/s" but found that the airblast levels could not be

estimated with reliability. Id. at 6.

Eltschlager ultimately concluded as follows:

> Within the boundaries of reasonable engineering and
> blasting certainty, . . . it is my opinion that blasting
> along the Mountaineer Xpress Pipeline near the Hamilton
> and Dodson residences generated ground vibration and
> possibly airblast levels in excess of the West Virginia
> State Fire Code Title 87 and recommended limits as
> established by the US Bureau of Mines. Numerous violations
> of the WV Fire Marshall code exist as discussed above. In
> the absence of a pre-blasting survey, a determination on
> blasting as the case of the alleged damages cannot be ruled
> out with 100% certainty at these non-typical residential
> structures.

Id. at 9.

## 2.  Supplemental Report

After reviewing the additional blasting logs produced by the

Defendants, Eltschlager supplemented his expert report to address

HAMILTON V. COLUMBIA TRANSMISSION, LLC                    1:20CV86

MEMORANDUM OPINION AND ORDER GRANTING MOTION TO
EXCLUDE TESTIMONY OF KENNETH ELTSCHLAGER [DKT. NO. 56]

the thirty-one (31) blasts that had occurred near the Hamilton residence between May 23, 2018 and October 13, 2018 (Dkt. No. 105-1). Eltschlager expanded upon his discussion of the deficiencies in the Defendants' blasting monitoring and recording keeping, id. at 5-14, and again finding their seismograph data to be unreliable based on their alleged noncompliance with safety regulations. Id.

Based on these alleged compliance issues, Eltschlager stated "the blasting log records fail to allow reasonable vibration predictions based on standard industry practices." Id. at 14. Nevertheless, he went on to estimate that the ground vibration levels "were most likely over 2.0 in/s with acceleration at 1.75g" and the airblast levels "exceeded 133 dBl" at the Hamilton residence. Id. at 14-15, 20. He also found that the scaled distance of the blasts to the Hamilton residence "would have been" below 50 ft/lbs½, and as low as 19 ft/lbs½. Id. at 5, 20.

Eltschlager amended his ultimate conclusion as follows:

Within the boundaries of reasonable engineering and blasting probability, . . . it is my opinion that blasting along the Mountaineer Xpress Pipeline near the Hamilton residences generated ground vibration and likely airblast levels in excess of the West Virginia State Fire Code Title 87, Fire Code and recommended limits as established by the US Bureau of Mines. Numerous violations of the WV Fire Marshall code exist as discussed above. In conjunction with the proven unreliability of the provided data and the known existence of incomplete or completely missing data,

9

HAMILTON V. COLUMBIA TRANSMISSION, LLC                    1:20CV86

MEMORANDUM OPINION AND ORDER GRANTING MOTION TO
EXCLUDE TESTIMONY OF KENNETH ELTSCHLAGER [DKT. NO. 56]

evaluation of the claim is cumbersome and likely
understated. The modular home residence is a non-typical
residential structure as related to the US Bureau of Mines
recommendations and is expected to respond more than
previously studied structures. . . In the absence of the
required pre-blast survey as a baseline for evaluation,
the damage claim is supported by the contemporaneous
damage reported by William and Linda Hamilton and Carl and
Jodi Dodson and confirmed by the testimony of John
Shrader. Relying in part on damages which the Plaintiffs
testify did not exist prior to the onset of blasting, the
atypical type structure, the poor foundation
construction, and estimated vibrations levels, it is my
opinion, to a reasonable degree of blasting probability
that the damages to the Hamilton modular home . . . were
caused by the blasting activities on the Mountaineer
Xpress Pipeline project . . . .

Id. at 20.

C.   **Motion to Exclude**

On August 27, 2021, Maine Drilling and APC moved to exclude

Eltschlager's testimony as unreliable and irrelevant (Dkt. No. 56).

As to reliability, they contended that his opinions were speculative

because he relied on his own subjective beliefs and visual

observations instead of any discernable methodology. Id. at 7-8. For

example, they asserted that Eltschlager failed to explain how he

estimated the vibration levels at the Hamilton residence or how he

calculated the scaled distance between the blasts and the residence

and relied on sources that discussed one- or two-story homes with

frame constructions and foundations, not modular homes. Id. at 7-9.

10

HAMILTON V. COLUMBIA TRANSMISSION, LLC                    1:20CV86

### MEMORANDUM OPINION AND ORDER GRANTING MOTION TO
### EXCLUDE TESTIMONY OF KENNETH ELTSCHLAGER [DKT. NO. 56]

The moving defendants also asserted that Eltschlager's opinions would not be helpful to the trier of fact because he discussed only the potential for damage to the Hamilton residence and failed to reach any conclusion on causation or damages to a reasonable degree of probability. Id. at 9-11.

In their supplemental briefing, the moving defendants contend that while "Eltschlager does offer additional opinions and analysis [in his supplemental report] pertaining to the blasting performed by [Maine Drilling], [] those opinions do not remedy the deficiencies requiring exclusion of this testimony. . ." (Dkt. No. 105 at 2). Specifically, they assert that Eltschlager's testimony should be excluded as unreliable because he (1) fails to identify any damage to the Hamilton property, (2) makes several improper assumptions related to ground vibration and airblast levels, (3) disregards the Defendants' undisputed data related to charge weights of the explosives used in the blasts, and (4) relies on studies that do not consider the impact of blasting on modular homes.

### D. Reliability

To assess reliability, courts conduct a flexible inquiry evaluating an expert's methodology rather than the expert's conclusion. TFWS v. Schaefer, 325 F.3d 234, 240 (4th Cir. 2003). "A

HAMILTON V. COLUMBIA TRANSMISSION, LLC                    1:20CV86

**MEMORANDUM OPINION AND ORDER GRANTING MOTION TO
EXCLUDE TESTIMONY OF KENNETH ELTSCHLAGER [DKT. NO. 56]**

reliable expert opinion must be based on scientific technical or

other specialized knowledge and not on belief or speculation, and

inferences must be derived using scientific or other valid methods."

Oglesby v. General Motors Corp., 190 F.3d 244, 250 (4th Cir. 1999).

Generally, courts base their reliability evaluation on the following

non-exclusive factors:

> (1) whether the particular scientific theory "can be (and
> has been) tested"; (2) whether the theory "has been
> subjected to peer review and publication"; (3) the "known
> or potential rate of error"; (4) the "existence and
> maintenance of standards controlling the technique's
> operation"; and (5) whether the technique has achieved
> "general acceptance" in the relevant scientific or expert
> community.

United States v. Crisp, 324 F.3d 261, 266 (4th Cir. 2003) (quoting

Daubert, 509 U.S. at 593-94).

Despite the moving defendants' assertion, Eltschlager has

identified specific damage that the Defendants' blasting operations

allegedly caused to the Hamilton residence. In his initial report,

he notes that it is a "double wide manufactured home[] sitting on

stacked cinder blocks" that has "a non-load-bearing masonry skirt

around the exterior in various modes of failure" (Dkt. No. 56-1 at

HAMILTON V. COLUMBIA TRANSMISSION, LLC                    1:20CV86

**MEMORANDUM OPINION AND ORDER GRANTING MOTION TO
EXCLUDE TESTIMONY OF KENNETH ELTSCHLAGER [DKT. NO. 56]**

5). He also stated that Hamilton reported water leaks and floor failings in the residence. Id.[2]

While Eltschlager does identify actual damage to the Hamilton residence, he has not reliably established that the Defendants' blasting caused such damage. Eltschlager asserts that the best method to gauge the impact of the adverse effects of blasting is to monitor ground vibrations and airblasts with a seismograph at the nearest structure. But if such monitoring did not occur or the records were inaccurate, compliance with state safety standards can be gauged by measuring the scaled distance of the blast to the structure.

In this case, Eltschlager states that the seismograph data cannot be used to determine the adverse effects of blasting on the Hamilton residence because he believes the Defendants' data to be inaccurate. Thus, the scaled distance approach would become appropriate. But Eltschlager also states that the Defendants' blasting log records are unreliable due to record keeping irregularities and so the numbers produced are not accurate. Then, without performing any calculations, he provides an estimate for the ground vibrations and airblast levels at the Hamilton home and

---

[2] Eltschlager's supplemental report expands upon the damage to Hamilton residence allegedly caused by the blasting (Dkt. No. 105-1). But, for the reasons discussed in the Court's March 16, 2022 Memorandum Opinion, these additional details have been stricken from Eltschlager's supplemental

HAMILTON V. COLUMBIA TRANSMISSION, LLC                    1:20CV86

MEMORANDUM OPINION AND ORDER GRANTING MOTION TO
EXCLUDE TESTIMONY OF KENNETH ELTSCHLAGER [DKT. NO. 56]

provides what he believes to be the scaled distances of the blasts.

From these estimates, he concludes that the Defendants' blasting

caused the alleged damage to the Defendants' home. This analysis has

several flaws.

First, Eltschlager assumes that there was an error with the

seismograph sensors which triggered false recordings of ground

vibrations. As Eltschlager explains, ground vibrations are "measured

as peak particle velocity (PPV), and the unit of measure is inches

per second (in/s)" (Dkt. No. 105-1 at 4). A seismograph is used to

measure PPV and has sensors which record the levels of blast-induced

ground vibration. Id. Decoupling of a sensor "may occur" if blast

acceleration exceeds a certain limit and the sensor has not been

secured to the ground or buried, as necessary (105-1 at 12-13). The

United States Bureau of Mines Report of Investigations 8507 ("RI

8507") recommends safe vibration amplitude limits of 0.5 in/s for

ground vibrations "based on the assumption that most homes respond

similarly and the resultant structure response is about 2.0 in/s."

Id. at 16.

None of the blasts near the Hamilton residence were recorded

to have a PPV in excess of 2.0 in/s; in fact, the highest values

report (Dkt. No. 171).

HAMILTON V. COLUMBIA TRANSMISSION, LLC                    1:20CV86

MEMORANDUM OPINION AND ORDER GRANTING MOTION TO
EXCLUDE TESTIMONY OF KENNETH ELTSCHLAGER [DKT. NO. 56]

recorded were 1.3 and 1.89 in/s. Eltschlager recognizes this fact, but asserts the ground vibrations were "likely higher than 2.0 in/s because of decoupling of the sensor" Id. at 14. In support, he points to one blast in particular. The reported acceleration level of a blast on October 8, 2019 indicates that the seismograph sensor should have been buried. The blasting record, however, does not indicate if, or how, the sensor was secured to the ground. And, according to Eltschlager, witnesses reported that the Defendants' routinely misplaced sensors and improperly secured them. Based on the reported acceleration level and the lack of information related to the securing of the sensor on this occasion, Eltschlager assumes that decoupling must have occurred and that the ground vibrations would have exceeded 2.0 in/s. But Eltschlager provides no valid support for this assumption. There is no evidence that decoupling occurred during this blast or any other. And merely because decoupling could conceivably have occurred does not make it true. Eltschlager also fails to explain why the hypothetical decoupling would cause the ground vibration level to exceed 2.0 in/s.

Second, Eltschlager provides no scientific basis for his assertion that the airblasts from the Defendants' blasting exceeded levels that could have damaged the Hamilton residence. A seismograph

15

HAMILTON V. COLUMBIA TRANSMISSION, LLC                    1:20CV86

### MEMORANDUM OPINION AND ORDER GRANTING MOTION TO
### EXCLUDE TESTIMONY OF KENNETH ELTSCHLAGER [DKT. NO. 56]

also employs a microphone to measure airblast levels, reported in decibels (dB), at nearby structures. Id. at 4. According to the National Fire Protection Association Standards, airblasts should not exceed 133 dB. Id. Eltschlager estimates that "the level of airblast exceeded 133 dB" at the Hamilton residence but his conclusion lacks adequate support. Initially, Eltschlager notes that, on several occasions, the Defendants' seismograph microphone recorded airblasts in the wrong frequency. Id. at 12. Rather than explaining if, or how, the frequencies measured could be converted to decibels, he assumes without explanation that during these blasts "airblast levels could have easily exceed 133 dBL." To support his estimate, he also points to two recordings from a nearby compressor station which show that airblast levels exceeded 142 dB. Id. Finally, Eltschlager relied on video footage from a blast on June 21, 2018, which "erupted wildly and threw the blasting mats and debris into the air." Id. From this, Eltschlager contends that "these types of events cause significant airblast" and that a seismograph should have been placed at the Hamilton residence on this date.

Eltschlager's conclusion that the airblast levels exceeded 133 dB at the Hamilton residence stands in stark contrast to his initial opinion that "the level of airblast cannot be estimated with

HAMILTON V. COLUMBIA TRANSMISSION, LLC                    1:20CV86

**MEMORANDUM OPINION AND ORDER GRANTING MOTION TO
EXCLUDE TESTIMONY OF KENNETH ELTSCHLAGER [DKT. NO. 56]**

reliability and may be elevated due to blasting mat heave as witnessed in the videos" (Dkt. No. 56-1 at 6). Moreover, in his supplemental report, Eltschlager states that "window breakage is the first sign of airblast caused damage and may occur at levels of 140 dB, or above" (Dkt. No. 105-1 at 17). And, although he believes the Hamilton residence to have suffered airblast damage, he never states that it showed the first sign of this type of damage.

Hamilton has failed to show that Eltschlager's nonexistent method of estimating airblast levels from his observation of a blasting video and measurements from surrounding landmarks is generally accepted in the blasting community, could be subject to peer review, or even whether his method has a potential rate of error. Thus, his estimate of airblast levels at the Hamilton residence during the Defendants' blasting operations lacks adequate factual support, calculation, or explanation and is therefore unreliable.

Third, as the moving defendants contend, in estimating the scaled distances of the blasts to the Hamilton residence, Eltschlager relied on an estimated weight of explosives rather than the documented weight of explosives. Eltschlager explains that "blasts are designed to detonate a series of charges or separate holes sequentially" and that "[v]ibration levels are dependent on the

HAMILTON V. COLUMBIA TRANSMISSION, LLC                    1:20CV86

### MEMORANDUM OPINION AND ORDER GRANTING MOTION TO
### EXCLUDE TESTIMONY OF KENNETH ELTSCHLAGER [DKT. NO. 56]

relationship of charge weight per delay and the distance to a given point" (Dkt. No. 105-1 at 3). He believed that the Defendants underreported the charge weights used in detonations because their reported weights did not match "the amount that would fit into a hole and [could be] fired within an 8-millisecond window." He therefore relied on the estimated charge weight to calculate the scaled distance between the Defendants' blasts and the Hamilton residence and to determine when a blasting seismograph should have been placed at the residence. The only evidence to support Eltschlager's opinion that the Defendants' underreported their charge weights is his own criticism of their blasting monitoring and record keeping.

Eltschlager also relies on the United States Bureau of Mines Report of Investigations 8507 ("RI 8507") and 8485 ("RI 8485"), which establish methods for monitoring residential reactions to ground vibrations and air blasts and suggest safe vibration levels. But these sources address the impact of blasting on one- to two- story homes, rather than on a modular home, like Hamilton's. Eltschlager recognizes that the Hamilton residence is not the typical structure as defined in these standards but asserts, without support, that as a non-typical structure "the modular home[] will respond to blasting induced vibrations in a more noticeable and possible damaging manner"

HAMILTON V. COLUMBIA TRANSMISSION, LLC                    1:20CV86

**MEMORANDUM OPINION AND ORDER GRANTING MOTION TO
EXCLUDE TESTIMONY OF KENNETH ELTSCHLAGER [DKT. NO. 56]**

(Dkt. No. 56-1).[3] Therefore, Eltschlager's opinions regarding the susceptibility of Hamilton's home to damage from blasting due to its non-typical modular structure also lack support and a proper scientific basis.

Finally, the majority of Eltschlager's report is committed to showing how the Defendants' blasting violated various safety standards. But he fails to establish how such violations would necessarily prove damage to the Hamilton residence. For example, Eltschlager asserted that blasts occurring at a scaled distance above than 50ft/lbs½ have a 100% chance of non-damage, while those occurring at a scaled distance below 50 ft/lbs½ violate state safety regulations. He then estimates that the blasts near the Hamilton residence "would have been" below 50 ft/lbs½, and as low as 19 ft/lbs½. Id. at 5, 20. Eltschlager assumes that, if blasting does not comply with regulatory or safety standards, some damage must have occurred but fails to support his assumption with any blasting literature or statistical evidence.

---

[3] In his supplemental report, Eltschlager supports this assertion by citing to an article authored by Michael Mann entitled "Response of Manufactured Homes to Blast Vibrations." But his discussion of and supplemental opinions based upon this source have been stricken (Dkt. No. 171).

HAMILTON V. COLUMBIA TRANSMISSION, LLC                    1:20CV86

MEMORANDUM OPINION AND ORDER GRANTING MOTION TO
EXCLUDE TESTIMONY OF KENNETH ELTSCHLAGER [DKT. NO. 56]

E.    Relevance

Evidence is relevant if it "helps 'the trier of fact to understand the evidence or to determine a fact in issue.'" Nease v. Ford Motor Co., 848 F.3d 219, 229 (4th Cir. 2017) (quoting Daubert, 509 U.S. at 591). An essential element of Hamilton's cause of action is that the Defendants' blasting caused damage to his property. An expert's opinion as to proximate cause must be stated in terms of reasonable probability. Id.; Hovermale v. Berkeley Springs Moose Lodge No. 1483, 271 S.E.2d 335, 340 (W. Va. 1980).

Here, Eltschlager's initial opinions would have been unhelpful to the trier of fact because he did not opine to a "reasonable degree of probability" that the Defendants' blasting caused any damage to Hamilton's home. Instead, he discussed generally the possibility of residential structural damage resulting from blasting and what the ground vibration and airblast levels could have been at the Hamilton residence and concluded that he could not rule out blasting as a cause of the alleged damage "with 100% certainty at [Hamilton's] non-typical residential structure[]." Id. at 5-6, 9. Now, after reviewing the complete blasting records, Eltschlager has supplemented his opinions and concluded that "to a reasonable degree of blasting probability [] the damages to the Hamilton modular home

20

HAMILTON V. COLUMBIA TRANSMISSION, LLC                    1:20CV86

MEMORANDUM OPINION AND ORDER GRANTING MOTION TO
EXCLUDE TESTIMONY OF KENNETH ELTSCHLAGER [DKT. NO. 56]

. . . were caused by the blasting activities on the Mountaineer Xpress Pipeline project . . . . (Dkt. No. 105-1 at 20). Accordingly, Eltschlager has remedied one of the defects raised by the moving defendants' motion to exclude his testimony.

But "[t]o be reliable under Daubert, the proposed expert testimony must have 'a valid scientific connection to the pertinent inquiry as a precondition to admissibility.'" Nease, 848 F.3d at 239 (citing Daubert, 509 U.S. at 592). Here, Eltschlager provides no scientific basis for his vibration estimates, relies on literature that studied blasting reactions of substantially different structures than the residence at issue in this case, and assumes that a violation of safety regulation equates to damage. His opinions are too speculative to be helpful to the trier of fact in determining whether the Defendants' blasting operations caused the alleged damage to Hamilton's home and must be excluded.

IV.  CONCLUSION

For the reasons discussed, because the Court finds that Eltschlager's testimony is unreliable and irrelevant, it **GRANTS** Maine Drilling and APC's motion to exclude his expert opinions (Dkt. No. 56).

It is so **ORDERED.**

21

**HAMILTON V. COLUMBIA TRANSMISSION, LLC**                    **1:20CV86**

**MEMORANDUM OPINION AND ORDER GRANTING MOTION TO
EXCLUDE TESTIMONY OF KENNETH ELTSCHLAGER [DKT. NO. 56]**

The Clerk **SHALL** transmit copies of this Memorandum Opinion and

Order to counsel of record.

DATED: March 16, 2022

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE