IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

WILLIAM HAMILTON, *individually and*
*as the personal representative*
*of the estate of Linda Hamilton*,

        Plaintiff,

v.                          //        CIVIL ACTION NO. 1:20CV86
                                   (Judge Keeley)

COLUMBIA TRANSMISSION, LLC,
TRANSCANADA USA SERVICES, LLC,
TC ENERGY, ANTHONY CAPP, JOHN SHRADER,
DOES 1, 2, 3, 4, 5, AND 6,
MAINE DRILLING AND BLASTING, INC., and
ASSOCIATED PIPELINE CONTRACTORS,

        Defendants.

//

COLUMBIA TRANSMISSION, LLC,
TRANSCANADA USA SERVICES, LLC,
TC ENERGY, ANTHONY CAPP, and JOHN SHRADER,

        Crossclaimants,

v.

ASSOCIATED PIPELINE CONTRACTORS,

        Cross Defendant.

//

ASSOCIATED PIPELINE CONTRACTORS,

        Crossclaimant,

v.

MAINE DRILLING AND BLASTING, INC.

        Cross Defendant.

**MEMORANDUM OPINION AND ORDER DENYING IN PART AND DEFERRING RULING
IN PART ON MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 65, 66, 70]**

      Pending are the motions for summary judgment of Associated

Pipeline Contractors ("APC") and Maine Drilling and Blasting, Inc.

("Maine Drilling") (Dkt. Nos. 65, 66, 70). For the reasons that

HAMILTON V. COLUMBIA TRANSMISSION, LLC                    1:20CV86

MEMORANDUM OPINION AND ORDER DENYING IN PART AND DEFERRING RULING
  IN PART ON MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 65, 66, 70]

follow, the Court **DENIES** their motions for summary judgment on Hamilton's claims for negligence (Count I), strict liability (Count II), private nuisance (Count III), but **DEFERS** its ruling on his claim for trespass (Count IV) (Dkt. Nos. 65, 66, 70).

## I.    BACKGROUND

### A.    Factual History

On June 25, 2016, Linda and William Hamilton executed an Easement and Right of Way Agreement ("Agreement") allowing Columbia Transmission, LLC, or its affiliates TransCanada USA Services, LLC and TC Energy, (collectively, "Columbia") to construct, install, and maintain an oil and gas pipeline across their property located in Doddridge County, West Virginia (Dkt. No. 67-1). Columbia planned to build a natural gas pipeline, to be known as the XPress pipeline, through West Virginia from Marshall County to Cabell County (Dkt. No. 27 at 18). "Spread 3" of this pipeline would run across the Hamiltons' property. Id. On November 14, 2017, Columbia contracted with Associated Pipeline Contractors ("APC") to construct the Spread 3 pipeline (Dkt. No. 65 at 2). APC, in turn, subcontracted a portion of the project to Maine Drilling and Blasting, Inc. ("Maine Drilling"). Id.

The Hamiltons allege that for several months beginning in May 2018 one or more of the Defendants conducted blasting operations near

2

HAMILTON V. COLUMBIA TRANSMISSION, LLC                    1:20CV86

**MEMORANDUM OPINION AND ORDER DENYING IN PART AND DEFERRING RULING IN PART ON MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 65, 66, 70]**

their home and that they had not anticipated, nor had they been given notice, that such blasting would occur (Dkt. No. 31 at 5-6). According to the Hamiltons, the Defendants' blasting operations caused damage to their home, including unlevel counters, warped floors, cracks in their walls and foundation, separation between their cabinets and walls, roof leakage, and sinkholes in their yard (Dkt. No. 31 at 6; 78-1 at 2). Additionally, they contend that the water supply from their well decreased and developed a foul odor, leaving them without potable water for several months, and that blasting left piles of rubble, boulders, rock along the right of way (Dkt. No. 78-1 at 3). Lastly, the Hamiltons assert that due to the Defendants' blasting operations and the resulting harm to their home, they were forced to relocate to Florida (Dkt. No. 78 at 4-5). The Defendants deny that their blasting operations caused any damage to the Hamiltons' home.

**B.   Procedural History**

On May 5, 2020, the Hamiltons filed this lawsuit, asserting twelve (12) causes of action related to the alleged permanent damage to their land, water well, and septic system (Dkt. No. 1).[1] After Linda Hamilton ("Mrs. Hamilton") passed away on September 1, 2020,

---

[1] The Hamiltons assert negligence, strict liability, trespass, private nuisance, fraud, vicarious liability, res ipsa loquitur, negligent hiring, training, and supervision, intentional infliction of emotional distress, negligent infliction of emotional distress, damages, and punitive damages (Dkt. No. 31).

**HAMILTON V. COLUMBIA TRANSMISSION, LLC**                    **1:20CV86**

**MEMORANDUM OPINION AND ORDER DENYING IN PART AND DEFERRING RULING IN PART ON MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 65, 66, 70]**

William Hamilton ("Hamilton") moved to substitute himself as personal representative of her estate (Dkt. No. 24) and amended his complaint to add a wrongful death claim, alleging that his wife's death was caused by the Defendant's negligence (Dkt. No. 31 at 17–18). Pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court granted the Defendants' motion to dismiss Hamilton's wrongful death claim (Dkt. No. 50).

Columbia filed crossclaims against APC alleging that APC had breached its duty to defend and indemnify Columbia against Hamilton's claims under an indemnification clause in their contract (Dkt. No. 34). APC also filed crossclaims against Maine Drilling on the same basis (Dkt. No. 36). The Court entered a scheduling order (Dkt. No. 22).

Maine Drilling moved for summary judgment on Hamilton's claims of negligence, strict liability, trespass, private nuisance, res ipsa loquitor, intentional infliction of emotional distress ("IIED"), and negligent infliction of emotional distress ("NIED") (Dkt. Nos. 65, 70). Likewise, APC joined Maine Drilling's motion and separately moved for summary judgment on Hamilton's negligence, private nuisance, trespass, IIED, and NIED claims (Dkt. Nos. 68, 66). After the Court reopened discovery for the limited purpose of developing the record related to blasting logs that the defendants

HAMILTON V. COLUMBIA TRANSMISSION, LLC                    1:20CV86

MEMORANDUM OPINION AND ORDER DENYING IN PART AND DEFERRING RULING
  IN PART ON MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 65, 66, 70]

had produced following the close of discovery, the parties
supplemented their summary judgment briefing (Dkt. Nos. 109, 111,
126, 127). In a Memorandum Opinion and Order entered on March 16,
2022, the Court granted summary judgment on Hamilton's claims for
res ipsa loquitur, IIED, and NIED, but deferred its ruling on the
remainder of their motions.

## II.    STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(a), "[t]he court
shall grant summary judgment if the movant shows that there is no
genuine dispute as to any material fact and the movant is entitled
to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). "A dispute
is genuine if a reasonable jury could return a verdict for the
nonmoving party," and "[a] fact is material if it might affect the
outcome of the suit under the governing law." Jacobs v. N.C. Admin.
Office of the Courts, 780 F.3d 562, 568 (4th Cir. 2015) (quoting 10A
Charles A. Wright et al., Federal Prac. & Proc. § 2728 (3d ed. 1998)).
When ruling on a motion for summary judgment, the Court reviews all
the evidence "in the light most favorable" to the nonmoving party.
Providence Square Accocs., L.L.C. v. G.D.F., Inc., 211 F.3d 846, 850
(4th Cir. 2000). The Court must avoid weighing the evidence or
determining its truth and limit its inquiry solely to a determination
of whether genuine issues of triable fact exist. Anderson v. Liberty

5

HAMILTON V. COLUMBIA TRANSMISSION, LLC                    1:20CV86

MEMORANDUM OPINION AND ORDER DENYING IN PART AND DEFERRING RULING
  IN PART ON MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 65, 66, 70]

Lobby, Inc., 477 U.S. 242, 249 (1986).  The moving party bears the
initial burden of informing the Court of the basis for the motion
and of establishing the nonexistence of genuine issues of fact.
Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving
party has made the necessary showing, the non-moving party "must set
forth specific facts showing that there is a genuine issue for trial."
Anderson, 477 U.S. at 256. The "mere existence of a scintilla of
evidence" favoring the non-moving party will not prevent the entry
of summary judgment; the evidence must be such that a rational trier
of fact could reasonably find for the nonmoving party. Id. at 248–52.

### III.  DISCUSSION

Following the entry of the Court's March 16, 2022 Memorandum
Opinion, the moving defendants' motions for summary judgment remain
pending on Hamilton's claims for negligence, strict liability,
trespass, and private nuisance.

### A.  Causation

The moving defendants argue that Hamilton's remaining claims
for negligence, strict liability, trespass, and private nuisance
fail because he cannot establish that the Defendants' blasting
operations damaged his property, an essential element of each claim.

To prevail on a negligence claim, the plaintiff must establish
that (1) the defendants owed him a duty; (2) they negligently breached

HAMILTON V. COLUMBIA TRANSMISSION, LLC                    1:20CV86

MEMORANDUM OPINION AND ORDER DENYING IN PART AND DEFERRING RULING
  IN PART ON MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 65, 66, 70]

that duty; and (3) his injuries were proximately caused by the breach of that duty. Wheeling Park Comm'n v. Dattoli, 787 S.E.2d 546, 551 (W. Va. 2016).

"Where a person chooses to use an abnormally dangerous instrumentality he is strictly liable without a showing of negligence for any injury proximately caused by that instrumentality." Peneschi v. Nat'l Steel Corp., 295 S.E.2d 1, 5 (W. Va. 1982). The use of explosives in blasting operations is "intrinsically dangerous and extraordinarily hazardous," and so subjects a contractor to liability without negligence for damages resulting to the property of another from such blasting. Whitney v. Ralph Myers Contracting Corp., 118 S.E.2d 622 (W. Va. 1961).

To constitute a trespass, the defendants' conduct must result in an actual, nonconsensual invasion of the plaintiff's property, which interferes with his possession and use of that property. Rhodes v. E.I. du Pont de Nemours & Co., 636 F.3d 88, 96 (4th Cir. 2011) (citing Hark v. Mountain Fork Lumber Co., 34 S.E.2d 348, 352 (W.Va. 1945).

A private nuisance arises when a person or entity has created a "substantial and unreasonable interference with the private use and enjoyment of another's land." Rhodes v. E.I. du Pont de Nemours

HAMILTON V. COLUMBIA TRANSMISSION, LLC                    1:20CV86

MEMORANDUM OPINION AND ORDER DENYING IN PART AND DEFERRING RULING
  IN PART ON MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 65, 66, 70]

& Co., 636 F.3d 88, 96 (4th Cir. 2011) (citing Hendricks v.

Stalnaker, 380 S.E.2d 198, 200 (W. Va. 1989)).

Here, Hamilton contends that he has produced sufficient

circumstantial evidence to create a genuine dispute of material fact

as to causation, including the testimony of his expert witness,

Kenneth Eltschlager ("Eltschlager"), his own testimony, and the

testimony of his son-in-law, Carl Dodson (Dkt. Nos. 79 at 7-19; 78

at 7-18). After the parties filed their briefs on summary judgment,

the Court granted the moving defendants' motion to exclude

Eltschlager's expert testimony as unreliable and irrelevant (Dkt.

No. 173). Hamilton nevertheless asserts that his lay witness

testimony creates a question of material fact as to causation.

The moving defendants, on the other hand, contend that there

is no question of material fact in dispute because they have proved,

with scientific facts, that their blasting could not have caused the

alleged damage (Dkt. No. 84 at 5). Their expert witness, Cathy

Aimone-Martin, has opined that the seismograph readings from the

Defendants' blasts show that each was below the limit capable of

causing structural damage (Dkt. No. 67-6). She also has opined that

"[t]he most notable defects documented in the Hamilton residence

during the site visit included floor and cabinets warping and severe

water intrusion into the ceilings. Such defects are caused by aging

8

HAMILTON V. COLUMBIA TRANSMISSION, LLC                    1:20CV86

MEMORANDUM OPINION AND ORDER DENYING IN PART AND DEFERRING RULING
  IN PART ON MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 65, 66, 70]

and the fact that the structure is not inhabited and not being
maintained. . ." Id. at 12.

Under West Virginia law, to recover for damage to property from
blasting, "the plaintiff must establish that the damages were caused
by, or were the result of, blasting." Syl. Pt. 1, Whitney v. Ralph
Myers Contracting Corp., 118 S.E.2d 622 (W. Va. 1961). Given the
nature of blasting cases, "causation of blasting damage must often
be proven through circumstantial evidence." Frye v. Boxley
Aggregates of W. Virginia, L.L.C., 2006 WL 1789016, at *2 (S.D.W.
Va. June 27, 2006) (citing Moore, Kelly & Reddish, Inc. v.
Shannondale, Inc., 165 S.E.2d 113, 122 (W. Va. 1968). Whether the
alleged damages were caused by blasting is a question to be resolved
by the trier of fact where there is conflicting evidence. Syl. Pt.
1, Whitney, 118 S.E.2d at 622.

Both parties rely on the same line of cases to support their
positions. The Supreme Court of Appeals for West Virginia first
addressed how a plaintiff may prove causation in a blasting case
in Whitney v. Ralph Myers Contracting Corp., 118 S.E.2d 622, 622 (W.
Va. 1961). There, the plaintiffs alleged that the defendant had
damaged their home when it used blasting during the construction of
a highway. Their home was situated approximately 1,800 feet from the
blasting. Shortly after the blasting occurred cracks began to appear

HAMILTON V. COLUMBIA TRANSMISSION, LLC                    1:20CV86

MEMORANDUM OPINION AND ORDER DENYING IN PART AND DEFERRING RULING
   IN PART ON MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 65, 66, 70]

in their basement walls and continued to spread until a wall collapsed approximately three months later. Id. at 624. The plaintiffs and their lay witnesses testified about the nature and severity of the blasting vibrations at the home, as well as the plaintiffs' complaints to the defendant about the alleged damage. Although no witness could testify that they saw any crack or other damage appear simultaneously with experiencing a blast vibration, the jury returned a verdict in favor of the plaintiffs.

On appeal, the defendant argued that the plaintiff had failed to establish causation, but our Supreme Court upheld the jury's verdict. It explained that to prove causation "[p]laintiffs were not required to show that the damages to the basement walls were the result of any particular or isolated explosion, but only to establish facts that would fairly raise an inference as to the cause thereof." Id. at 624. It also found that the plaintiffs had presented sufficient facts to permit the jury to infer that the damages were the direct result of defendant's blasting because the blasting had occurred "at or in the vicinity of plaintiffs' property" and the plaintiffs had noticed damage contemporaneously with blasting vibrations. Id. at 624-625.

West Virginia courts have applied this standard in subsequent cases. In Frye v. Kanawha Stone Co., the plaintiffs alleged that one

HAMILTON V. COLUMBIA TRANSMISSION, LLC                    1:20CV86

MEMORANDUM OPINION AND ORDER DENYING IN PART AND DEFERRING RULING
  IN PART ON MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 65, 66, 70]

particular blast damaged their homes 962 feet from the blast site. 505 S.E.2d 206, 208 (W. Va. 1998). They testified that the blast caused the windows and cabinets to shake and caused a crack to suddenly appear in one of their foundations. They also testified that they reported the vibrations and damage to the defendant. The Supreme Court again upheld the jury's verdict in favor of the plaintiffs, stating that the plaintiffs had met their burden of proof by presenting testimony about the blast at issue, the lack of prior damage to their home, and the sudden appearance of cracks following the blast.

In Bartley v. D.L. Morgan, Jr., Inc., the plaintiffs alleged that blasting outside of their business had shaken the whole building, and, within one to two weeks, caused the concrete floor to crack. 516 S.E.2d 513 (W. Va. 1995). The circuit court granted summary judgment to the defendant based on its expert witness's testimony that the damage had been caused by differential settlement, not blasting. The Supreme Court reversed, finding that whether the blasting caused the alleged damage was a question of material fact.

Finally, in Frye v. Boxley, the court reviewed Whitney, Kanawha, and Bartley and observed that they shared "key facts" tending to show that the plaintiffs had asserted adequate circumstantial evidence of causation in a blasting case. 2006 WL 1789016, at *4 (S.D.W. Va.

11

HAMILTON V. COLUMBIA TRANSMISSION, LLC                    1:20CV86

MEMORANDUM OPINION AND ORDER DENYING IN PART AND DEFERRING RULING
 IN PART ON MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 65, 66, 70]

June 27, 2006). First, the cases "emphasized the close distance from plaintiffs' property to the blasting, which allegedly caused damage." Id. Second, the plaintiffs could testify about the "damage occurring contemporaneously with blasting." Id. The court then applied these key facts to the case before it and granted summary judgment to the defendants. Although the plaintiffs testified that they had felt vibrations of increasing intensity over several years, none could testify that their properties suffered contemporaneous damage. Id. at *5. Further, the plaintiffs' homes were located between 0.90 and 2.39 miles from the blasting, and they had not reported suspected damage to the defendant. Id.

Pursuant to this line of cases, the exclusion of Hamilton's expert testimony on causation is not fatal to his claim so long as there is sufficient circumstantial evidence that "fairly raise[s] an inference as to the cause" of his damages. Whitney, 118 S.E.2d at 624. Upon careful review, the Court concludes that Hamilton has met this burden.

Hamilton's property is in close proximity to the Defendants' blasting site. At least thirty (30) blasts occurred on Hamilton's Easement and, according to Aimone-Martin, the closest blast was within 160 feet of his residence (Dkt. No. 67-6 at 55). This is closer than the blasting in both Whitney and Kanawha.

HAMILTON V. COLUMBIA TRANSMISSION, LLC                    1:20CV86

**MEMORANDUM OPINION AND ORDER DENYING IN PART AND DEFERRING RULING
IN PART ON MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 65, 66, 70]**

Hamilton also has evidence of damage occurring contemporaneously with the Defendants' blasting. In an affidavit he describes the alleged damage, stating that during the Defendants' blasting operations "many of the vibrations . . . shook the whole house and would often be severe" (Dkt. No. 78-1 at 2). Blasting began on May 24, 2018, and as early as "June 2018, [Hamilton] began noticing damage to [the] property that was not there before the blasting started, such as unlevel counters, warped floors, cabinets separating from the walls, roof leaking[,] and sink holes appearing in the yards." Id. Then, on October 3, 2018, while blasting continued, Hamilton found damage to his living room floor. Id. He also contends that in the Fall of 2018 his well water developed a foul odor before the pressure "dropped substantially" and the well stopped producing. Id. He also states that, at some unspecified time after the blasting began, he began to notice sink holes and piles of rubble in the yard. Id. at 3. Hamilton reported these suspected damages to Columbia's agent "many times" throughout 2018. In response, Columbia provided Hamilton potable water, paid for him and his wife to stay in a hotel when their water tanks froze, and arranged for an environmental engineer to inspect the property in September 2018. Notably, however, that inspection never occurred.

13

HAMILTON V. COLUMBIA TRANSMISSION, LLC                    1:20CV86

MEMORANDUM OPINION AND ORDER DENYING IN PART AND DEFERRING RULING
IN PART ON MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 65, 66, 70]

Based on the proximity of the Defendants' blasting to the Hamilton property, as well as the fact that Hamilton noticed damage that happened contemporaneously to the blasting and reported these suspected damages to Columbia while the blasting was ongoing, he has offered sufficient evidence to fairly raise the inference that the Defendants' blasting proximately caused the damage to his property. Ultimately, this is a question that must be resolved by the trier of fact.

The moving defendants attempt to argue that Hamilton has failed to show a dispute of material fact because he cannot rebut the opinion of their expert witness, Aimone-Martin, that the damage to the Hamilton property were caused by aging and lack of maintenance, not blasting (Dkt. No. 84 at 6 (citing Dkt. No. 67-6)). Under West Virginia law, however, "[t]he testimony of expert witnesses on an issue is not exclusive and does not necessarily destroy the force or credibility of other testimony. The jury has a right to weigh the testimony of all witnesses, experts and otherwise; and the same rule applies as to weight and credibility of such testimony." Kanawha, 505 S.E.2d at 207 (quoting Syl. Pt. 2, Webb v. Chesapeake & O. Ry. Co., 144 S.E. 100 (W. Va. 1928)).

Several courts in West Virginia have found that expert reports, such as Aimone-Martin's, were sufficiently rebutted by lay witness

**HAMILTON V. COLUMBIA TRANSMISSION, LLC**                    **1:20CV86**

**MEMORANDUM OPINION AND ORDER DENYING IN PART AND DEFERRING RULING IN PART ON MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 65, 66, 70]**

testimony. See Whitney, 118 S.E.2d at 622 (upholding jury verdict based on plaintiffs' lay witness testimony even though the defendants' expert opined that the collapsed wall had been improperly constructed and that the blasting complied with regulations); Kanawha, 505 S.E. 2d at 208 (noting that the jury did not disregard, but disbelieved, the defendants' expert opinion that the vibration levels could not have caused the damage which was preexisting and naturally occurring because it had been contradicted by plaintiffs' lay witness testimony); Bartley, 516 S.E.2d at 513 (plaintiffs' handwritten letter sufficiently rebutting insurance companies' expert report that damage came from settlement, not blasting). But see, Boxley, 2006 WL 1789016, at *5–6 (S.D.W. Va. June 27, 2006) (recognizing this principle but granting summary judgment because the plaintiffs had provided no evidence to dispute the defendants' expert reports). Hamilton has offered lay testimony in contradiction to Aimone-Martin's opinions that is sufficient to create an issue of fact as to causation. The Court therefore turns next to address the moving defendants' remaining arguments with respect to Hamilton's individual claims.

**B.    Negligence (Count I)**

Hamilton relies on the doctrine of res ipsa loquitur to support his negligence claim (Dkt. Nos. 79 at 7-19; 78 at 7-1). Res ipsa

HAMILTON V. COLUMBIA TRANSMISSION, LLC                    1:20CV86

MEMORANDUM OPINION AND ORDER DENYING IN PART AND DEFERRING RULING
   IN PART ON MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 65, 66, 70]

loquitur is an exception to the rule that negligence cannot be
presumed, and it arises when "mere occurrences of certain events in
and of themselves suggest negligence, barring another plausible
explanation." Kyle v. Dana Transport, Inc., 649 S.E.2d 287, 290 (W.
Va. 2007). Under this doctrine, it may be inferred that harm suffered
by the plaintiff is caused by negligence of the defendant when "(a)
the event is of a kind which ordinarily does not occur in the absence
of negligence; (b) other responsible causes, including the conduct
of the plaintiff and third persons, are sufficiently eliminated by
the evidence; and (c) the indicated negligence is within the scope
of the defendant's duty to the plaintiff." Syl. Pt. 4, Foster v. City
of Keyser, 501 S.E.2d 165 (W. Va. 1997).

     The moving defendants assert that Hamilton cannot rely on res
ipsa loquitur because he has also sought damages under a theory of
strict liability (Dkt. No. 67 at 11). They rely on Crawford v. Gen.
Motors Corp., for the proposition that "[t]he doctrine of res ipsa
loquitur is inapplicable in actions alleging strict liability." 2007
WL 1960611, at *1 (N.D.W. Va. July 2, 2007). But that reliance is
misplaced. In Crawford, the plaintiffs intended to prove their
products liability claim, by relying on res ipsa loquitur, instead
of expert testimony, to establish that an airbag was not reasonably
safe for its intended use. Id. at *2. The court granted summary

                                    16

HAMILTON V. COLUMBIA TRANSMISSION, LLC                    1:20CV86

MEMORANDUM OPINION AND ORDER DENYING IN PART AND DEFERRING RULING
  IN PART ON MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 65, 66, 70]

judgment to the defendants, finding that the plaintiffs could not rely on res ipsa loquitur to advance their strict liability claim because such claims do not require proof of negligence. Id. Unlike the plaintiffs in Crawford, Hamilton relies on res ipsa loquitur to support his negligence claim, not his strict liability claim. Thus, the moving defendants' argument is unpersuasive.

They also assert, for the first time in their reply brief, that Hamilton cannot satisfy the essential elements of res ipsa loquitur; specifically, that he has not eliminated the other possible causes of the alleged damage to his property, including age, wear and tear, and lack of maintenance (Dkt. No. 84 at 6-7). Because "[t]he ordinary rule in federal courts is that an argument raised for the first time in a reply brief or memorandum will not be considered," Clawson v. FedEx Ground Package Sys., Inc., 451 F. Supp. 2d 731, 734 (D. Md. 2006), the Court is not required to address this argument. Even so, it lacks merit. As discussed, Hamilton has offered adequate circumstantial evidence to create an issue of fact as to whether the Defendants' blasting caused damage to his property, or if that damage arose from another source.

C.   **Private Nuisance (Count III)**

The moving defendants also seek summary judgment on Hamilton's private nuisance claim, contending that their blasting operations

HAMILTON V. COLUMBIA TRANSMISSION, LLC                    1:20CV86

MEMORANDUM OPINION AND ORDER DENYING IN PART AND DEFERRING RULING
   IN PART ON MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 65, 66, 70]

did not interfere with his use of his land. Hamilton has sought

damages for impaired use and enjoyment of his property, including

"physical damage to the home, land, water well, and septic system,

loud noises, well water safety, loss of air quality, excessive dust,

mud, bright lights, debris left on the land, vibrations/shaking,

explosions/blasting, and trespassing" (Dkt. No. 31, ¶ 49). But,

according to the moving defendants, these alleged physical damages

do not constitute an "interference with property rights or privileges

associated with [Hamilton's] use of the land" (Dkt. No. 84 at 9)

(emphasis in original).

     A private nuisance arises when a person or entity has created

a "substantial and unreasonable interference with the private use

and enjoyment of another's land." Rhodes v. E.I. du Pont de Nemours

& Co., 636 F.3d 88, 96 (4th Cir. 2011) (citing Hendricks v.

Stalnaker, 380 S.E.2d 198, 200 (W. Va. 1989)). Nuisance lacks a

precise definition, but the Supreme Court of West Virginia has

surmised that "nuisance is the unreasonable, unusual, or unnatural

use of one's property so that it substantially impairs the right of

another to peacefully enjoy his or her property." Booker v. Foose,

613 S.E.2d 94, 97 (W. Va. 2005) (qouting 58 Am. Jur.2d Nuisances §

2 (2002)). "[N]uisance is a flexible area of the law that is adaptable

to a wide variety of factual situations." Sharon Steel Corp. v. City

18

HAMILTON V. COLUMBIA TRANSMISSION, LLC                    1:20CV86

MEMORANDUM OPINION AND ORDER DENYING IN PART AND DEFERRING RULING
  IN PART ON MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 65, 66, 70]

of Fairmont, 334 S.E.2d 616, 621 (W. Va. 1985); see also Booker v.
Foose, 613 S.E.2d 94, 97 (W. Va. 2005) (collecting cases applying
West Virginia nuisance law). In blasting cases, "[a] nuisance is
established where blasting is done in such a manner as to cause
continuous rather than temporary damage from rock and debris or from
concussions and vibrations." 31A Am. Jur. 2d Explosions and
Explosives § 75.

     Here, Hamilton is not seeking damages because the Defendants'
construction activity temporarily inconvenienced him. Rather, he
alleges that he suffered continuous property damage from their
negligence during construction and vibrations caused by blasting.
Therefore, the injury alleged permits Hamilton to assert a private
nuisance claim. And, based on the circumstantial evidence previously
discussed, there is a genuine question of material fact as to whether
the Defendants' blasting operations deprived him of the full use and
enjoyment of his property.

     The moving defendants also contend that Hamilton's claim fails
because he already has been compensated for the nuisance arising from
construction (Dkt. No. 67 at 8-9). In exchange for $10,200, Hamilton
executed the Easement which granted Columbia a perpetual
right-of-way across an 80-foot strip of land for the purpose of
constructing, maintaining, and operating the XPress pipeline (Dkt.

HAMILTON V. COLUMBIA TRANSMISSION, LLC                    1:20CV86

MEMORANDUM OPINION AND ORDER DENYING IN PART AND DEFERRING RULING
  IN PART ON MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 65, 66, 70]

No. 67-1). In the Easement, Hamilton acknowledged that he had been compensated for Columbia's activities within the right-of-way and its temporary workspaces. Id. at 4.

While Columbia compensated Hamilton for the use of the right of way during construction of the XPress pipeline, as explained, this is not the inconvenience about which he now complains. Hamilton alleges that the Defendants' activities did not just interfere with his use and enjoyment of the Easement during construction, but that their activities on the Easement interfered with his use and enjoyment of his residence long-term. Thus, he has not been compensated for the type of nuisance about which he now complains.

D.    **Trespass (Count IV)**

To constitute a trespass, the defendants' conduct must result in an actual, nonconsensual invasion of the plaintiff's property, which interferes with his possession and use of that property. Rhodes v. E.I. du Pont de Nemours & Co., 636 F.3d 88, 96 (4th Cir. 2011) (citing Hark v. Mountain Fork Lumber Co., 34 S.E.2d 348, 352 (W.Va. 1945). The moving defendants assert that Hamilton cannot recover on his trespass claim because he consented to the Defendants use of the right of way in the Easement (Dkt. No. 84 at 10-11). Hamilton, on the other hand, asserts that the Easement is invalid because the

**HAMILTON V. COLUMBIA TRANSMISSION, LLC**                    **1:20CV86**

**MEMORANDUM OPINION AND ORDER DENYING IN PART AND DEFERRING RULING IN PART ON MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 65, 66, 70]**

contract was silent on a material term: how the pipeline would be constructed and if blasting would be necessary (Dkt. No. 78 at 21-22).

It is well established that for a contract to be formed there must be a meeting of the minds of the parties on all essential and material terms. Sprout v. Bd. of Educ. of Cty. of Harrison, 215 W. Va. 341, 345, 599 S.E.2d 764, 768 (2004). Although Hamilton agreed that Columbia and its subcontractors could construct the XPress pipeline on the right of way, the Easement is silent as to whether blasting would be necessary to complete the construction.

He contends that Columbia never informed him that blasting would occur and, that had it done so, he would not have executed the Easement. Thus, based on Hamilton's assertion that he did not intend to allow blasting on the right of way when he executed the Easement and the silence of the Easement drafted by Columbia, there is an issue of material fact as to whether the parties contemplated blasting and had a meeting of the minds when executing the Easement and, thus, whether Columbia's invasion of the right of way was in fact consensual. Before deciding this issue, however, the Court intends to hear additional argument at the final pretrial conference.

## IV.   CONCLUSION

For the reasons discussed, the Court **DENIES** the moving defendants' motions for summary judgment on Hamilton's claim for

**HAMILTON V. COLUMBIA TRANSMISSION, LLC**                              **1:20CV86**

**MEMORANDUM OPINION AND ORDER DENYING IN PART AND DEFERRING RULING
IN PART ON MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 65, 66, 70]**

negligence (Count I), strict liability (Count II), and private

nuisance (Count III), but **DEFERS** its ruling on his claim for trespass

(Count IV) (Dkt. Nos. 65, 66, 70).

It is so **ORDERED.**

The Clerk **SHALL** transmit copies of this Memorandum Opinion and

Order to counsel of record.

DATED: March 17, 2022

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE